IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**YVETTE ARAGON**,

        Plaintiff,

vs.                              No. 10-CV-848 RHS

**MICHAEL J. ASTRUE**,
**Commissioner of Social Security,**

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Payment of Benefits, Or In The Alternative, For Rehearing, With Supporting Memorandum [Doc. 14], which became fully briefed on May 17, 2011.  The Court considered the pleadings and the supporting documentation, and grants in part and denies in part Plaintiff's Motion.  Specifically, the Court grants the motion to the extent that Plaintiff seeks a remand for a rehearing consistent with this memorandum opinion and order and denies the motion to the extent that Plaintiff is seeking a reversal of the Administrative Law Judge's decision.

## CASE HISTORY

Yvette Aragon, the claimant asserts that she became disabled on December 2, 2005.  (Administrative Record (AR) 127).  She filed her claim for social security disability benefits on April 2, 2007.  (AR 127).  The Administrative Law Judge (ALJ) held a video hearing on July 14, 2009.  (AR 11).  At the hearing, Ms. Aragon was represented by counsel.  (AR 26).  On September 15, 2009, the ALJ issued a written decision that Ms. Aragon was not disabled.  (AR

26). Ms. Aragon appealed to the Social Security Administration's Appeals Council, which declined review on August 10, 2010 (AR 1). Ms. Aragon filed in this Court on September 14, 2010.

## ISSUES FOR REVIEW

The ALJ is required to review Ms. Aragon's case in a sequential five-step process to determine if she is disabled. 20 C.F.R. § 404.1520. This Court then reviews the ALJ's decision-making process. For the first two steps, the ALJ found in favor of Ms. Aragon, and the steps are mentioned here only as background. At the first step of the analysis, the ALJ determined that Ms. Aragon is not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). (AR 13). In the second step, the ALJ considered whether Ms. Aragon has a severe medical impairment (20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c). The ALJ found that Ms. Aragon is obese and has lupus and fibromyalgia. (AR 13).

For step three, the residual functional capacity assessment, and step four, the ALJ made determinations adverse to Ms. Aragon and she alleges that the ALJ erred at these steps. At the third step, the ALJ again considered the medical severity of the impairments and whether the impairment satisfies the specific regulatory listings. The ALJ found that Ms. Aragon did not satisfy Listing 14.02 (AR 15) and Ms. Aragon generally alleges throughout her brief that the ALJ failed to properly evaluate her condition.

Prior to step four, the ALJ reviewed Ms. Aragon's residual functional capacity and determined that Ms. Aragon had the capacity to perform a full range of light work. (AR 15). Ms. Aragon alleges that the ALJ failed to correctly evaluate the treating physician's opinion.

At the fourth step, the ALJ considered whether, in light of Ms. Aragon's residual

functional capacity, Ms. Aragon can still perform her past relevant work.  The ALJ determined that Ms. Aragon could perform her past work as an emergency services dispatcher.  (AR 17).  Ms. Aragon disputes this conclusion.

The ALJ did not analyze step five.

The case presents issues which must be resolved in order to render this case ready for meaningful judicial review, Clifton v. Chater, 70 F.3d 1007, 1009 (10th Cir. 1996), prior to reviewing the ALJ's decision at steps three, four and five for substantial evidence.

## STANDARD OF REVIEW

The Court's review of the administrative decision is both factual and legal.  The factual findings at the administrative level are conclusive "if supported by substantial evidence."  42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Grogan v. Barnhart, 399 F.3d 1257, 1259 (10th Cir. 2005).  Substantial evidence is less than a preponderance, Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases."  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

## REMAND

**1.    The ALJ is requested to identify what the ALJ understood Ms. Aragon alleged were her disabilities.**

The ALJ is requested to identify what the ALJ understood Ms. Aragon alleged were her disabilities because there are discrepancies between what Ms. Aragon alleged were her

disabilities compared to what the ALJ analyzed and decided.  Ms. Aragon completed an interview and application with the Social Security Administration on an unspecified date.  (AR 145 et seq.)  The Field Office Disability Report notes that Ms. Aragon alleged that she had multiple connective tissue disorders.  (AR 149.)  At the hearing, Ms. Aragon cited lupus, fibromyalgia, memory problems and unspecified illness as the reasons that she could not work.  (AR 30.)  Ms. Aragon's Motion claims disability from "fibromyalgia, memory problems, depression and abdominal pain."  Motion at 1.   However, the ALJ's decision states that "The claimant has the following severe impairments: Obesity; Lupus; and Fibromyalgia."  (AR 13.)  While both Ms. Aragon and the ALJ raised the issue of fibromyalgia, the ALJ appears to have *sua sponte* adjudicated lupus and obesity.  It is unclear why the ALJ's decision addresses different issues than Ms. Aragon's  initial application for disability and her subsequent motion to this Court.  Upon remand, the ALJ is requested to identify what he understood were Ms. Aragon's alleged disabilities and what source he relied on to identify those as her alleged disabilities.

**2.     The ALJ must state the factors that led to the conclusion that Ms. Aragon is impaired by obesity.**

The ALJ must state the factors that led the ALJ to the conclusion that Ms. Aragon is impaired by obesity so that this Court can review the ALJ's analysis.  In the decision, enumerated heading three, the ALJ states that the claimant has the severe impairment of obesity.  (AR 14.)   However, there is not any mention in the decision of how the claimant meets any definition of obesity, nor is there any explanation of how obesity impairs Ms. Aragon.

The ALJ also noted that he "considered what effect the claimant's obesity, by itself and

in combination with other impairments, has on the claimant's ability to perform daily living and work activities." (AR 15.) It is unclear on what page of the decision the ALJ considered the effect of the claimant's obesity on her abilities, and what the ALJ concluded. It is also unclear what evidence in the record the ALJ used to consider the effect of the claimant's obesity and what definition of obesity the ALJ used when applying Ms. Aragon's facts to any disability law regarding obesity.

On remand, the ALJ must state what definition of obesity he used, and what factors led him to the conclusion that Ms. Aragon is obese and impaired by obesity.

3. **The ALJ must state what weight he gave to the treating physician's opinion.**

The ALJ references a treating physician. (AR 17.) The ALJ does not state the name of the treating physician, does not state what diagnosis the treating physician gave to the claimant, and does not explain what weight the ALJ gave the treating physician's diagnosis. (AR 17.) This is error because the ALJ must state what weight he gave to the treating physician's opinion.

> According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources. In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.' To make this determination, the ALJ: must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

<u>Langley v. Barnhart</u>, 373, F.3d 1116, 1119 (10th Cir. 2004) (internal quotations and citations omitted).

The ALJ also references the treating physician's medical records, but not does provide a citation to the page. (AR 17.) The treating physician's medical records appear to start on page

333 of the Administrative Record and run to page 432, which is 99 pages. Upon remand, the ALJ is requested to cite to the specific pages on which his decision is based so that this Court can follow the ALJ's analysis. The ALJ must also be explicit about the weight assigned to the treating physician's opinion.

4. **The ALJ is requested to state the specific findings that led to the conclusion that Ms. Aragon could return to work as a dispatcher.**

At step five of the analysis, the ALJ concluded that Ms. Aragon is capable of returning to work as an emergency services dispatcher (AR 17), which is the job she left due to alleged disabilities. During the hearing, the ALJ asked the vocational expert a hypothetical question about an individual with characteristics similar to Ms. Aragon. (AR 57.) Based on the information provided, the vocational expert testified that the only job available would be dispatcher and that claimant could perform that job. (AR 57-58.) The ALJ then incorporated this into his decision.

Earlier in the hearing, Ms. Aragon testified to why she had left her previous employment as a dispatcher, the only job that the vocational expert opined that she could do. She left the position because, "I had to have a release saying that I was able to go back to that job, to work there, and I couldn't obtain a medical release." (AR 29.) Ms. Aragon could not sit for prolonged times because of her pain. (AR 30.) She also experienced mental difficulties in her work. "I could answer the phone, but sometimes, I couldn't exactly do what was required, or the appropriate thing, and my partner would have to do what needed to be done, and I just was no longer able to do any of that. I wasn't able to function anymore." (AR 30.)

The exchange between the ALJ and the vocational expert did not address any of the

evidence relating to Ms. Aragon's previous inability to perform as a dispatcher. There was not any discussion in the ALJ's decision regarding how to reconcile the fact that the ALJ concluded that Ms. Aragon could return to the job for which she could not obtain a medical release. The ALJ is requested to state the specific factual findings that led to the conclusion that Ms. Aragon could return to the same job she left due to her alleged disabilities.

5. **The ALJ is requested to state what effect, if any, Ms. Aragon's mental capacity issues could have on her performance as a dispatcher, and the ALJ is requested to address the medical opinion of licensed psychologist Mary Ann Cotten, Ph.D.**

The ALJ concluded that Ms. Aragon could return to work as a dispatcher, but this conclusion does not resolve or even address the contrary evidence presented at the hearing or in the record regarding Ms. Aragon's mental capacity for a fast-paced position addressing 911 calls. At the hearing, Ms. Aragon testified to blacking out and being in a fog a good percentage of the time. (AR 35-36.) She had not driven a car for several years before the hearing. AR 40. While being evaluated by licensed psychologist Mary Ann Cotten, Ph.D, the claimant said she had slurred speech while trying to work as a dispatcher. (AR 480.) Ms. Aragon reported that her memory is so poor that she has to be reminded to take her medication. (AR 481.) The psychologist noted that when Ms. Aragon was asked to remember seven words, she could remember only four of them. None of this information is addressed in the ALJ's conclusion that Ms. Aragon could return to work addressing emergency calls, nor did the ALJ review the medical opinion from the licensed psychologist who evaluated Ms. Aragon. Upon remand, the ALJ is requested to analyze these issues before concluding that Ms. Aragon can return to her previous work.

6.  **The ALJ is requested to more fully explain what he considered in evaluating Ms. Aragon's credibility.**

    The ALJ did not credit Ms. Aragon's testimony. He noted, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 17.) The ALJ is requested to more fully explain which statements from Ms. Aragon are inconsistent with the residual functional capacity assessment.

    In a statement that appears to be an explanation of why the ALJ does not believe Ms. Aragon's complaints about her physical ailments, the ALJ noted that the claimant's treating physician does not believe that she has fibromyalgia and cites to Exhibit 5F. AR 17. This exhibit is 99 pages. Upon remand, the ALJ is requested to cite to specific pages and state why the evidence discredits Ms. Aragon's testimony. In a statement regarding Ms. Aragon's mental ailments, the ALJ notes that her medication for depression was prescribed by her treating physician and also intended to treat her fibromyalgia. (AR 17.) If this is the ALJ's reason for not crediting Ms. Aragon's testimony that she has depression, the ALJ is requested to explain why it matters who prescribed the anti-depressant medication and why it matters that the medication also treats a physical ailment.

7.  **The Social Security Administration must provide the medical expert with Ms. Aragon's complete medical records before relying on the medical expert's opinion.**

    The medical expert, Dr. Beard, who testified and rendered an opinion at Ms. Aragon's hearing had not reviewed all the medical records that the claimant asserts she submitted to the Social Security Administration. (AR 48-49.) Without having viewed her complete history, the medical expert offered his opinion at the hearing and the ALJ presumably relied on this

incomplete analysis. The Social Security Administration's own regulations suggest that it should have provided the relevant records to the medical expert before he testified, based on the Administration's definition of evidence, including, but not limited to:

> At the administrative law judge and Appeals Council levels, findings, other than the ultimate determination about whether you are disabled, made by State agency medical or psychological consultants and other program physicians or psychologists, or other medical specialists, and opinions expressed by medical experts or psychological *experts that we consult based on their review of the evidence in your case record.*

20 CFR § 416.912(b)(8) (italics added).

Even more problematic than the fact that the medical expert did not review the records that Ms. Aragon testified that she submitted is the fact that the medical expert appeared to construe the missing records against Ms. Aragon. The missing records relate to care Ms. Aragon had received at the Mayo Clinic for one week in 2006. Dr. Beard stated, "I wonder why we don't have those reports, Your Honor. It gives the physician in my position the impression that his [sic] people are showing us the things that they want us to see, and not the entire picture." (AR 48.) Upon remand, the Social Security Administration must provide the 2006 Mayo Clinic records to the medical expert before he offers his testimony.

8. **The ALJ should develop the record regarding why the medical expert came to his opinion.**

During the hearing, Ms. Aragon's attorney attempted to determine why the medical expert concluded that the claimant did not have lupus. (AR 53-54.) The attorney asked the physician what objective evidence he would look for to diagnosis lupus. He responded, "Serologic testing, muscle biopsies, and so forth." (AR 54.) He added, "And I would be fairly sure that the Mayo Clinic Department of Rheumatology did those." (AR 54.) The medical expert appeared to conclude that Ms. Aragon does not have lupus based on results that the

medical expert thought were in the records he had not reviewed.  This is problematic because the ALJ may have relied on an expert who came to his opinion based on an inaccurate assumption rather than any evidence in the record.  Furthermore, the claimant promptly stated that the Mayo Clinic did not perform the tests that the medical expert noted he would use to conclude that she did not have lupus.  (AR 54.)

Claimant's attorney also sought an explanation from the medical expert regarding why he disputed the effects fibromyalgia would have on the claimant.  The medical expert interrupted the attorney and stated, "I'll not repeat the answer that I gave."  (AR 55.)  The attorney then sought the assistance of the ALJ by stating, "Your Honor, I'm not asking for a diagnosis.  I'm asking for an explanation."  The medical expert replied, "You got it.  That's all you're going to get."  (AR 55.)  The ALJ has a duty to develop the record.  "The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  Henrie v. U.S. Dept. of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993).  When the claimant's counsel asked the ALJ for help in eliciting an explanation from the medical expert, the ALJ should have helped develop the record according to the issue raised.  The record as it stands is not ready for meaningful review because the ALJ did not cause the medical expert to explain why he disagreed with the treating physician.  Upon remand, the ALJ is requested to develop the record more thoroughly so that the medical expert responds to Ms. Aragon's questions.

**9.     The Social Security Administration is requested to submit a transcript with fewer inaudible notations.**

Meaningful review of the medical expert's opinion is difficult given the number of

"inaudible" notations in the transcript. (AR 51-52.) On the two pages of the transcript in which the medical expert is giving his opinion, there are 10 instances in which he was inaudible to the transcriber and therefore undecipherable to this Court. Upon remand, the Social Security Administration is requested to reduce the number of inaudible notations so that there are more complete sentences in the medical expert testimony.

WHEREFORE, IT IS ORDERED that Plaintiff's Motion to Reverse and Remand for a Rehearing is granted to the extent that it seeks a remand for a rehearing and denied to the extent that it seeks a reversal of the ALJ's decision. This matter is remanded for additional proceedings consistent with this opinion.

If the parties resolve this matter, promptly advise the Court that further judicial intervention is unnecessary. If the Social Security Administration holds additional proceedings, the ALJ may also address any other concerns of alleged error that he sees fit.

_____
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE